RICHARD COCKE & CO. v. BIG MUDDY COAL & IRON CO.

(Court of Civil Appeals of Texas. El Paso. April 10, 1913. Rehearing Denied April 24, 1913.)

1. SALES (§ 161*)—PERFORMANCE—DELIVERY F. O. B.

The delivery of coal to a railroad company at a mine under a contract of sale f. o. b. mines constitutes a delivery to the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 377–380; Dec. Dig. § 161.*]

2. SALES (§ 181*) — ACTION FOR PRICE — ADMISSIBILITY.

In an action for the price of coal to be delivered f. o. b. mines, evidence of the buyer that he did not receive any of the coal was inadmissible; since the question was whether the seller had delivered at the mine, and the fact that only a certain part of the coal had finally reached the buyer, would not tend to prove that it was not put on the cars.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. § 181.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**3. EVIDENCE (§ 158*)—BEST AND SECONDARY EVIDENCE—CONTRACTS.**

Where coal was sold and shipped f. o. b. mines upon mine weights and was also weighed at destination, the testimony of the buyer as to shortage of weight, without accounting for the record taken by the weigher at either place, was inadmissible as secondary evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. § 158.*]

**4. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS OF FACT.**

In an action for the price of coal, where the buyer under his general denial was entitled to prove payment, his evidence that he had paid in full for the coal was not inadmissible as opinion evidence, but called for a statement of fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**5. SALES (§ 404*)—REMEDIES OF BUYER—ACTION FOR BREACH.**

When a buyer under an executory contract for sale and delivery of coal inspects it, and finds that it is not what his contract calls for as to quality, he can refuse to receive it, and sue for such damages as he has suffered by the seller's breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. § 404.*]

**6. SALES (§ 179*) — PERFORMANCE OF CONTRACT—BUYER'S ACCEPTANCE.**

Where coal tendered in performance of an executory contract of sale is not such as was described in the contract and this is known to the buyer, he must either refuse it and rescind, or accept and abide by the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. § 179.*]

**7. SALES (§ 364*) — ACTION FOR PRICE — INSTRUCTIONS—DAMAGES.**

In an action for the price of coal sold f. o. b. mines, where defendant pleaded the general denial and set up a contract with plaintiff for a certain grade of coal under which plaintiff had shipped a lower or inferior grade, obliging defendant to fulfill his contracts to purchase coal at a higher market price, a requested charge on the buyer's damages was within the issues, and should have been given.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1065–1076; Dec. Dig. § 364.*]

**8. SALES (§ 418*)—REMEDIES OF BUYER—ACTION FOR BREACH—DAMAGES.**

On a seller's breach of an executory contract for the sale of coal, the measure of damages is the market price of such coal, less the contract price, the market price for this purpose to be determined as of the time and place of delivery agreed on.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

**9. SALES (§ 418*)—REMEDIES OF BUYER—ACTION FOR BREACH—SPECIAL DAMAGES.**

Where a seller, at the time an executory contract for the sale of coal is made, has notice that it is being purchased for sale in a particular market, or is to be supplied in pursuance of a particular contract, he may be reasonably held to have made his contract in contemplation of that purpose, so that on his breach thereof damages for the loss caused thereby, if not uncertain and remote, are recoverable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by the Big Muddy Coal & Iron Company against Richard Cocke & Co. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Harris & Harris, of Houston, for appellant. A. T. Carleton, of Houston, for appellee.

HARPER, C. J. The Big Muddy Coal & Iron Company brought this suit against Richard Cocke, doing business in the name of Richard Cocke & Co., for the sum of $478.46 for coal, and alleged the following cause of action: On the 5th day of August, 1909, defendant ordered from plaintiff 35 cars of coal of grade and quality known as "Big Muddy coal" at a price of $1.65 per ton f. o. b. mines, weights at shipping point to govern, and that plaintiff shipped coal in accordance with such order, and, further, that on August 21, 1909, the defendant ordered from plaintiff about 30 car loads of what is known as "Carterville lump coal" at a price of $1.20 per ton f. o. b. mines, weights at shipping point to govern. The plaintiff accepted the order, and shipped the coal.

Defendant answered by general denial, and specially that he admits entering into the contract of August 5, 1909, for coal at $1.65 per ton f. o. b. the mine, but denies that he agreed to pay for coal which he did not receive; that the cars of coal received under said contract were, when they arrived at Houston, Tex., short in weight from one to five tons per car less than the weight billed to this defendant. He also admits that he entered into a contract on August 21, 1909, for 30 cars of Carterville coal at $1.20 per ton f. o. b. the mine, but expressly denies that he agreed to pay for any coal not delivered to defendant; that the coal shipped under the last-named contract was short in weight from one to five tons per car less than weights billed to defendant. Further answering, he says that he has paid plaintiff for all coal actually delivered to him, that he refused to pay the $478.46 because it represents the price of coal under the aforesaid contracts billed but never delivered, and charges that same was never loaded on the cars. Further answering, defendant alleged that by the contract of August 5, 1909, he ordered the best grade of lump coal or egg coal at $1.65 per ton f. o. b. the mine, but that the coal shipped was not up to grade, but was a lower grade, worth only 50 cents per ton on the market, making $19 per car load less than contract price, whereby defendant lost $665. He further says that August 10, 1909, he ordered 30 cars of Carterville lump coal for shipment during the next 60 days at $1.20 per ton f. o. b. the mine, but that plaintiff failed to keep this contract, and that by reason of plaintiff's failure to ship said coal at Carterville for defendant defendant was compelled to go into the open market and buy coal at an advanced price

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to fulfill his own contracts; that he so purchased 255½ tons at $2 per ton, an advance of 80 cents per ton over the contract price, making a total loss of $204.40 by reason of plaintiff's failure to ship coal as agreed.

The plaintiff by supplemental answer set up general denial, and further alleged that the contract of August 5, 1909, was to deliver the coal to the railway company, as the agent of defendant, and the defendant was to pay $1.65 per ton for all coal delivered on board the cars at the mine, and that, if the coal was not delivered to defendant, it was not the fault of plaintiff, and it is not responsible therefor. And as to the contract of August 21, 1909, for 30 cars Carterville coal at $1.20 per ton f. o. b. mine, was for that grade, to be delivered to defendant on board of cars, thus making the railway company the defendant's agent, and therefore is not responsible if the coal was not delivered to defendant. Alleged that in each instance the amount of coal charged to defendant was loaded on the cars at the mine, but, if not, then defendant is estopped from recovering for short weights because defendant has paid in full for all coal loaded up to the 1st day of January, 1910, and that he has failed to pay for coal shipped only since that date. Further plead general denial to the charge that the coal was not as represented, but, if it was not, that defendant is estopped to complain, and cannot recover by reason of any inferiority in grade of coal because he accepted all coal shipped and paid full contract price up to January 1, 1910, and made no claim to plaintiff for any deduction Denies that it failed to keep the contract to deliver 30 cars Carterville coal, but was able and ready to so do, but that defendant instructed plaintiff to discontinue the shipments, and that he is thereby estopped from claiming the $204.40 claimed.

[1, 2] Appellant's first error assigned: "The court erred in excluding, over the objection of defendant, Richard Cocke, defendant's evidence as to the shortage of weight of coal shipped by the plaintiff to the defendant, and as to the poor quality of said coal, and as to the failure of plaintiff to keep its written contract to ship the thirty (30) cars of Carterville coal within sixty (60) days from the date of the contract, and as to the complete failure of plaintiff to ship seven cars of Carterville coal out of the aforesaid thirty cars."

First proposition: "Where testimony is improperly rejected, the judgment must be reversed, unless it was merely cumulative and could not have changed the result."

Second proposition: "Opinion evidence of nonexperts is generally admissible upon questions relating to quality, quantity, time, number, and speed and the like."

The following questions were asked:

"Mr. Cocke, did you receive a single lump of the coal which plaintiff is suing you for?

"Do you know about what the shortage was on each car load of coal, of your own personal knowledge, on each car load of coal shipped you, and, if so, what was such shortage?

"Have you refused or failed to pay for any coal shipped to you?"

The letters which are the basis of the cause of action sued on are as follows: "March 15, 1909. We would like to handle your coal at Houston. Please make a proposition. When we are in the market for coal, we will certainly buy yours. The weights and quality are very satisfactory. Richard Cocke & Co." Upon reply to this by the Coal Company, fixing prices, defendant ordered the coal, the value of which is sued for, and it was expressly stipulated in writing by the Coal Company that the place of delivery was at the mine, and upon mine weights f. o. b. railroad cars at the mine. The proffered testimony of Cocke that he did not get a lump of coal in Houston shipped by the Big Muddy Coal & Iron Company was properly excluded, because the question was, Did the Coal Company deliver on board the cars at the mine? and the fact that only so much coal finally reached Houston would not tend to prove that it was not put on the cars. Under all the authorities the delivery of the coal to the railroad company at the mine under the facts of this case was a delivery to the purchaser. Chas. F. Orthweiss & Sons v. Wichita Falls Mill & Elevator Co., 32 Tex. Civ. App. 600, 75 S. W. 364.

[3] Likewise the court did not err in excluding the opinion of witness Cocke as to the shortage of weight of coal shipped, because it was not the best evidence in view of the fact that the testimony showed that the coal was shipped upon mine weights, and, further, that the coal was weighed in Houston, and there was no attempt to account for the record taken by the weigher at either place, which was the best evidence. Sabine Land & Improvement Co. v. Perry, 54 S. W. 327.

[4] It was error for the court to exclude the testimony of witness Cocke "that he had paid plaintiff in full for all the Carterville coal he ever bought from them." Under his general denial he was entitled to prove payment, and the proffered testimony was not opinion evidence, but called for a statement of fact, evidence of which he may not have had any except his own knowledge.

The second assignment charges that "the court erred in the charge given by the court to the jury in instructing the jury that the defendant cannot recover in this case, nor is he entitled to any credit in this case, under his claim that certain of the coal delivered to him by the plaintiff failed to come up to the contract grade; and on this issue you are instructed to find against the claim of the plaintiff." And that the court erred in refusing special charge No. 2 requested by the defendant, which is as follows: "If you

believe from the evidence that in the contract of date August 5, A. D. 1909, defendant, Richard Cocke & Co., contracted for the best grade of lump or egg coal, and if you further believe from the evidence that the plaintiff did not ship to the defendant, Richard Cocke & Co., the best grade of lump or egg coal, but did ship a lower or inferior grade, then you will find your verdict for defendant, Richard Cocke & Co., and against the plaintiff in such sum as amounts to the difference between the original market value of the aforesaid best grade ordered and the reasonable market value of the lower and inferior grade (if any there was), delivered to the defendants."

The evidence in this case shows that the coal was received, inspected, accepted, and actually used by the defendant.

[5, 6] When a purchaser under an executory contract for sale and delivery of personal property inspects the same, and finds that it is not what his contract calls for as to quality, he can refuse to receive it, and sue for such damages as he has suffered by the breach of the agreement; he must take the property under the contract or not at all. If the property tendered be not such as is described in the contract, and this be known to the purchaser, he must either refuse it and rescind, or accept and abide by the agreement. Edwards v. Wooldridge, 52 Tex. Civ. App. 512, 115 S. W. 920.

[7] The fourth and fifth assignments are as follows:

Fourth error: "The court erred in the charge given to the jury that the defendant cannot recover in this case any amount under its claim that the plaintiff failed to ship 30 cars of Carterville coal under the contract alleged by defendant as dated August 10, 1909, and otherwise known as the contract of August 10, 1909, and as to this claim on the part of the defendant you will find against defendant."

Fifth error: "The court erred in refusing special charge No. 3, requested by defendant, Richard Cocke, reading as follows: If you believe from the evidence that on or about, to wit, August 11, 1909, plaintiff quoted defendant Richard Cocke & Co., a mine price of $1.20 per ton for 30 car loads of Carterville lump coal for shipment during the next 60 days, and, to wit, for shipment between August 10, 1909, and October 10, 1909, which offer the defendant, Richard Cocke, accepted; and if you further believe that the plaintiff failed to keep its contract and to ship said 30 cars of coal within 60 days from the said August 10, 1909, and if you further believe from the evidence that by reason of such failure of the plaintiff to so ship said coal to the defendant, Richard Cocke & Co., said defendant was compelled, in order to fulfill his contracts, to go into the open market and buy coal at an advanced price over the said $1.20

per ton, then you will find your verdict for the defendant, Richard Cocke & Co., and against the plaintiff for such sum as the said defendant was obliged to pay in excess of the aforesaid $1.20 per ton." This charge should have been given. The pleading and evidence raised the question, and the special charge offered is substantially correct.

[8] Ordinarily, if a contract for the sale of personalty, executory on the part of the vendor, is broken by him, the measure of damages is the market price of such property less the contract price, and the market price for this purpose must be determined as to the time and place of the delivery agreed upon.

[9] But if at the time the contract is made the vendor has notice or knowledge that the goods are being purchased for sale in a particular market, or to be supplied in pursuance of a particular contract, he may fairly and reasonably be deemed to have made his contract in contemplation of that purpose, and to have assumed the risks thereby entailed, then, if he breaks his contract, damages for loss caused thereby, if not uncertain and remote, may be recovered. Sutherland on Damages, 52; Kirby Lumber Co. v. Cummings & Co., 57 Tex. Civ. App. 291, 122 S. W. 273. In this case the evidence conclusively shows that at the time the sales were made plaintiff knew that defendant purchased the coal for resale in Houston, Tex.

But plaintiff in answer to the assignments under consideration contends that the defendant by his own acts prevented the plaintiff from fulfilling the contract by stopping the shipments. Without expressing any opinion as to the evidence, we think the evidence raises a question of fact as to whether the defendant did anything to prevent the delivery or shipment of the coal as ordered by defendant, and therefore should have been submitted to the jury, bearing in mind the measure of damages hereinabove indicated.

For the errors indicated, the cause is reversed and remanded for a new trial.

McKENZIE, J., not sitting.